*105 Caria, per
Evans, J.
It is objected to the charge of the presiding Judge, in these cases, that the jury were instructed, that by the articles of agreement, the defendants were partners in the sale of the grain received as toll at the mill. The elementary writers define a partnership to be, a contract between two or more persons, to place their money, effects, labor, and skill, or some, or all of these, in some lawful business, or traffic, and to share the profits and bear the loss in certain proportions. 3 Kent Com., 23. There is a class of cases, where a portion of the profits of a business may be given, by way of compensation for personal services; as in the case of an overseer, whose wages depends on the quantity of produce made, and the price for which it is sold; and of a clerk in a store, who receives, in lieu of certain wages, a share of the profits. But these persons are mere agents, with a contingent salary. They have no property in the things out of which the profits are to arise. Alexander had no interest in the mill, and so far as that was concerned, he was correctly styled in the articles as a miller; he was not McBee’s partner in the mill; but when the grain received as toll was mixed up, and became the subject of traffic, each being part owner, and interested in the proceeds of the sale, I thought at the trial, and still think, that they were partners in that particular business. The lines which divide partnerships from other joint interests are very shadowy. None of the elementary writers have succeeded in making them out clearly; and as it would be an unnecessary investigation in this case ; and, especially, as there is some diversity of opinion among my brethren, I do not propose to attempt, (if, indeed, the thing be practicable,) to lay down any rules by which to determine, in all cases, whether the articles make the parties partners, or not. As a general rule, it seems to me, that relation will exist, wherever there is a joint property in the thing sold, and a mutual interest in the result of the salé. The partnership, in these cases, if it existed, by the articles, extended only to the sale of the grain received as toll; it did not extend to the buying of grain, and the juries were expressly instructed, in all the cases, that McBee was not liable, under the articles, for the and *106 Alexander from the plaintiffs. The question of partnership, as between the defendants, was to be decided by reference to the articles; but as to others, to whom the articles were unknown, the question was to be decided by the ostensible business carried on in their name and for their benefit. It was very clear, from the evidence in these cases, that, besides toll-wheat and corn, Alexander carried on a traffic in wheat, flour, corn, and other articles, both in buying and selling, and some, at least, of these articles, were carried into the books of account kept in the name of McBee & Alexander, and were included in accounts rendered, and in notes taken in their name. From these facts, it was argued, that a partnership, more extended than that embraced by the articles, did exist between these parties, in fact: extending to the buying and selling of wheat, corn, and the other articles embraced in the demands of these plaintiffs. I cannot say that the evidence, unexplained, does not admit of that interpretation. It was attempted to account for these circumstances, by shewing, that everything besides the toll, was, in fact, Alexander’s property; but instead of keeping a separate book for his own private dealings, whenever he let a customer of the mill have an article which belonged to himself, he charged it in the account of the purchaser, on the books of McBee & Alexander; but when he and McBee settled, these articles being his private property, were excluded from the settlement. That that was the fact with many of the things charged, such as screenings, pigs, pork, and beef, there was no reasonable grounds to doubt; and, in my judgment, it was very probable that it was the fact in relation to the other things; but the books were kept so loosely, that I cannot say the jury were not authorized by the evidence to come to a different conclusion. And if from the proof, they were satisfied that a partnership existed between the defendants, extending to and embracing within its scope, the wheat, corn, and other things purchased by Alexander from the plaintiffs, then McBee is liable; and in this point of view, it is not material whether the plaintiffs trusted Alexander alone, or not, for if McBee was a partner of Alexander, and shared in the profits of the business carried on by him, he would be *107 liable, although his participation was not known to, or any credit given to him by the plaintiffs; as he would then stand on thé footing of a secret partner, and be liable as such.
Independent of the ground of actual partnership, there was some evidence that McBee participated in the proceeds of the sales of Benson’s wheat; and also, that the wheat and corn bought of some of the other plaintiffs, was to supply the regular customers of the mill, and charged in their accounts ; and the jury were instructed, that if the wheat and other articles, though bought on Alexander’s credit, were mixed up with the wheat and corn belonging to the mill, and sold for the mutual benefit of McBee and Alexander, then McBee would be liable to the plaintiffs, on the ground of participation in the pro-’ fits. Every partnership is more or less limited. None are so extensive as to embrace every thing ; and one partner may carry on a separate business on his own account, in those things which the co-partnership does not embrace ; and so long as he keeps it separate and distinct, so long it will be his own business ; but when he mingles it with the co-partnership effects, and sells it for the mutual benefit of all the partners, and the proceeds of the sale is carried to their joint account, and the profits divided among them, then they will be liable in that particular transaction, on the ground of participation in profit. They have had the benefit of the thing purchased, and should be liable to the seller, because, by taking a part of the profits, they take from the creditors a part of the fund which is the proper security for the payment of the debts. (3 Kent 27, and the cases there referred to.)
The only remaining ground of appeal which was urged in this Court, and upon which it is thought necessary to say any thing, other than what is contained in the report of the presiding Judge, is the 2nd, in which it is claimed that the defendants should have had a credit for the sums in Roberts’s hands, as the plaintiff’s proportion of Alexander’s assigned estate. I do not understand that Mr. Roberts is the agent of the plaintiffs. He was the as-signee appointed by Alexander to sell his property, and pay his debts, pro rata. The plaintiffs, it is true, consent *108 ed and requested him to act, hut so long as the money remains in his hands, it is no payment to them. They have not consented to receive it as a payment of their demands against McBee and Alexander. On the contrary, some of them have expressly declined to receive it on that account. Besides this, as to a part of the plaintiffs, they have other demands than those recovered in these actions; and the proportion of Alexander’s estate to which they are entitled according to Mr. Roberts’s statement, is their proportions of their whole demands, and not the proportion of what they have established in these cases, as a debt due by McBee and Alexander.
In reviewing the legal questions involved in these cases, I do not perceive the defendants have been able to establish their proposition, that there was error in the charge of the presiding Judge, on any of the legal questions involved. Four of these cases were tried before me, and I am free to confess, the evidence on the questions of partnership and participation of profits, was not such as to satisfy my mind of McBee’s liability, but I cannot say there was no evidence from which the jury might not draw a contrary conclusion ; I cannot, therefore, see how we can interfere with the verdicts, without trenching upon the legitimate province of the jury. I am willing, whenever called on, to take the responsibility of deciding the law of a case, and in general, to leave to the jury the undivided responsibility of deciding the facts.
In the consideration of these cases, my remarks have been more particularly directed to the four cases tried before me. Benson’s case, which was tried before my brother Butler, does not vary, in any material point, from the others, and should share the same fate. The motions, in all the cases, are dismissed.
JOSIAH J. EVANS.
We concur. J. S. Richardson, J. B. O’Neall, A. P. Butler. Earle, J. absent.